# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Stephen W. Carlson,                                    Civil No. 05-1860 (DWF/SRN)

      Plaintiff,

      v.                                     **REPORT AND RECOMMENDATION**

Kelly Services, Inc.,
American Express Financial Corp.,
American Express, International
Multifoods Corp., and General Mills, Inc.,

      Defendants.

_____

Stephen W. Carlson, pro se

Megan L. Anderson, Esq., on behalf of Defendant Kelly Services, Inc.

Julie Anne Fleming-Wolfe, Esq., on behalf of Defendant American Express Financial
Advisors, Inc. and American Express

Daniel G. Wilczek, Esq. and  Daniel N. Lovejoy, Esq., on behalf of Defendant
International Multifoods Corporation

Kathryn Mrkonich Wilson, Esq. and Ruon S. Sawyer, Esq., on behalf of Defendant
General Mills, Inc.

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

      The above-entitled matter came before the undersigned on December 2, 2005 on

Defendant General Mills, Inc.'s Motion to Dismiss (Doc. No. 3), Defendant Kelly

Services, Inc.'s Motion to Dismiss (Doc. No. 9), Defendants American Express Financial

Advisors and American Express' Motion to Dismiss (Doc. No. 15), and Defendant

International Multifoods' Motion to Dismiss or for Summary Judgment or for More

Definite Statement (Doc. No. 21).  This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, this Court recommends granting Defendants' motions and dismissing Plaintiff's Complaint with prejudice.

## I.    BACKGROUND

Plaintiff Stephen Carlson (Carlson) worked for Kelly Services, Inc. (Kelly), a temporary staffing agency, in the fall of 1997.  (Compl. ¶ 6.)  Kelly Services placed Carlson with American Express Financial Advisors, a subsidiary of American Express, (hereafter both entities referred to as American Express) on a temporary assignment from November 1997 through mid-December 1997.  (Id.)  On December 15, 1997, American Express hired Carlson as a permanent employee.  (Id.)  Thereafter, Carlson worked for American Express until June 8, 2001.  (Id.)  On February 7, 2001, American Express informed Carlson his position would be eliminated.  Doc. No. 242 at 2 in Carlson v. Am. Express Fin. Corp., Civ. No. 02-4084 DWF/SRN.[1]  Carlson worked at

---

[1] In this Report and Recommendation, where the Court refers to orders, pleadings, or briefs filed in Carlson v. Am. Express Fin. Corp., Civ. No. 02-4084 DWF/SRN, the Court does so by taking judicial notice of the referenced finding or decision.  Hart v. Comm'r, 730 F.2d 1206, 1208 (8th Cir. 1984) (per curiam) ("[F]ederal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to matters at issue.")  Such notice is proper pursuant to Federal Rule of Evidence 201(d) and because Plaintiff references orders, pleadings, and briefs from the Civ. No. 02-4084 case in setting forth the allegations contained in the Complaint in this case.  "Although not addressed by the Eighth Circuit, other circuits have determined that where a plaintiff chooses not to attach to the complaint, or incorporate by reference, a document upon which it relies, and is integral to the complaint, the defendant may produce such document in support of a motion to dismiss."  Brogren v. Pohlad, 933 F. Supp. 793, 798 (D. Minn. 1995) (citing Second Circuit and other cases in support). Here, Plaintiff references (with and without citation) several orders, pleadings, and briefs from the Civ. No. 02-4084 case in his current Complaint, including the complaint, his reply memorandum in support of his motion to amend, this Court's March 2, 2004 Order

American Express until June 8, 2001. (Compl. ¶ 6.)  After leaving American Express,

Carlson reapplied at Kelly Services and went back to work for Kelly on June 12, 2001.

(Id. ¶ 7.)  Kelly placed Plaintiff at Pillsbury/General Mills during the merger of the two

companies.  (Id. ¶ 10 & nn.11-14.)  While on this assignment with General Mills, an

International Multifoods Corporation (IMC) employee requested that he provide her with

a sample can of General Mills cake icing for a photo shoot.  (Id. ¶ 10.)  Plaintiff also

appears to allege that IMC, General Mills, and Kelly attempted to injure Plaintiff's

employment relationship with Kelly and Kelly's clients by falsely accusing him of

refusing to return the can of icing to his supervisor.  (Id. ¶ 17.)  Carlson remained

employed by Kelly Services until he was fired in late December 2001.  (Id. ¶ 9.)

A.      **MDHR and EEOC Charge**

On February 8, 2002, Carlson filed a charge with the Minnesota Department of

Human Rights (MDHR) and Equal Employment Opportunity Commission (EEOC) in

which he claimed American Express discriminated against him on the basis of his sex,

_____

denying Plaintiff's Motion to Amend (Doc. No. 74) and District Judge Donovan W.
Frank's Order (Doc. No. 254) adopting this Court's Report and Recommendation (Doc.
No. 242) in which this Court recommended granting defendants' motions for summary
judgment and denied Plaintiff's cross motion for summary judgment.  Taking judicial
notice of these orders, pleadings, and briefs does not require treating Defendants'
motions as motions for summary judgment.  Mo. ex rel. Nixon v. Coeur D' Alene Tribe,
164 F.3d 1102, 1107 (8th Cir. 1999) ("Some materials that are part of the public record
or do not contradict the complaint may be considered by a court in deciding a Rule
12(b)(6) motion to dismiss."), cert. denied, 527 U.S. 1039 (1999).  Cf. Brogren v.
Pohlad, 933 F. Supp. at 798 (documents integral to the complaint not considered
matters outside the pleadings).  Relatedly, and as addressed in more detail herein, the
Court also finds that Plaintiff is collaterally estopped from alleging facts which are
controverted by factual determinations this Court made in the prior federal litigation (i.e.,
Civ. No. 02-4084), such as, but not limited to, the date on which American Express
informed him his position was being eliminated or the date on which he filed his
Minnesota Human Rights/Equal Employment Opportunity Commission charge.

age, and marital status. (Compl. Ex. P-20.)  Carlson charged that American Express employed him from December 15, 1997 to June 8, 2001.  (Id.)  Carlson's charge did not mention Defendants Kelly Services, Multifoods Corporation, or General Mills.  (Id.)  On June 26, 2002, the MDHR dismissed Carlson's charge against American Express as follows:

> Minnesota Statutes section 363.06, subd. 3, establishes that a claim of unfair discriminatory practices must be filed within one year after the occurrence of the practice.  To be timely filed, this charge had to have been filed within one year of the notice of termination given the charging party on February 7, 2001.  Charging party filed a charge of discrimination with the Minnesota Department of Human Rights on February 8, 200[2].  This charge is dismissed because its untimely filing places it outside the jurisdiction of this Department.  Charging Party may wish to consult with private legal counsel about pursuing this matter under other legal causes of action with longer statutory filing periods.

Doc. No. 242 at 2-3 in Civ. No. 02-4084.  The EEOC adopted the MDHR's findings, dismissed the action, and issued Carlson a "right-to-sue" letter on July 18, 2002. (Compl. Ex. P-1.)

**B.    Prior Federal Court Litigation**

Plaintiff filed a complaint in federal court on October 15, 2002.  Doc. No. 1 in Civ. No. 02-4084.  He alleged disparate impact and treatment on the basis of his gender, age, and marital status pursuant to the Minnesota Human Rights Act (MHRA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Age Discrimination in Employment Act of 1967 (ADEA).  Id.  He also alleged violations of the Fair Labor Standards Act (FLSA) for failure to pay overtime against Defendant American Express.  Id.  Plaintiff's complaint did not name Kelly Services, International Multifoods, or General Mills as defendants.  Id.  On November 12, 2002, Carlson filed an amended complaint in which

4

he added Kelly Services as a Defendant.  Doc. No. 4 in Civ. No. 02-4084.

Subsequently, Plaintiff sought to amend his complaint again to add three new

parties—the State of Minnesota/Minnesota Department of Human Rights, General Mills,

and International Multifoods—and to add new claims against American Express and

Kelly.  Doc. Nos. 21 & 74 in Civ. No. 02-4084.  This Court summarized Plaintiff's

proposed claims as follows:

> Against the State of Minnesota/Minnesota Department of Human
> Rights, Plaintiff, through 42 U.S.C. § 1983, alleges constitutional violations
> of the First Amendment right to petition the government, the Fourteenth
> Amendment right to equal protection and due process, the Fifth Amendment
> right to equal protection and due process, and the Contracts Clause.
> (Compl. ¶¶ 87-95).  Plaintiff may also be making Title VII and ADEA claims
> against the State of Minnesota/Minnesota Department of Human Rights.
>     Plaintiff appears to seek to add constitutional claims against American
> Express and Kelly similar to those he proposes to assert against the State of
> Minnesota/Minnesota Department of Human Rights–Fourteenth Amendment,
> Fifth Amendment, and Contracts Clause.
>     Against International Multi[f]oods, Plaintiff appears to seek to add a
> claim for defamation and possibly a claim for tortious interference with a
> contract.
>     Plaintiff seeks to add General Mills as a defendant but fails to allege
> a cognizable claim.

Doc. No. 74 at 3-4 in Civ. No. 02-4084 (citations omitted).  The Court denied Plaintiff

leave to amend to add the above parties and claims.  Id. at 16.  In addressing Plaintiff's

proposed claims against IMF, the Court reviewed the relevant allegations:

> After Plaintiff was fired by American Express, Kelly placed Plaintiff in a
> position with General Mills during the merger of General Mills and Pillsbury.
> (November 12 Comp. ¶ 8).  Carl Goedjen and Deb Jacobson worked for
> General Mills prior to the merger.  (March 14 Compl ¶ 78).  Mr. Goedjen was
> one of Plaintiff's supervisors at General Mills.  Id. at ¶ 82.  On or about
> December 6, 2001, Ms. Jacobson, while a General Mills employee, made "a
> bad faith gift to Plaintiff of two cans of Pillsbury icing that were sales samples
> of a product no longer sold."  Id. at ¶ 78.  Plaintiff alleges that a few days later
> Mr. Goedjen and Ms. Jacobson became employees of IMF as part of the
> Federal Trade Commission approval of the General Mills/Pillsbury merger,

but Plaintiff remained a General Mills employee. Id. While an IMF employee, Plaintiff alleges that Ms. Jacobson sent Kathy Beyer to demand return of one of the cans of icing. Id. Coveting the gifted icing, Plaintiff "would not return it." Id. The following day Ms. Jacobson called Plaintiff and demanded return of the icing cans because "it was the only remaining can of that icing product in the entire company" and "was needed at that very moment for a photo shoot for an advertisement at Target Stores." Id. Plaintiff told Ms. Jacobson that he had already brought the can home, and it was being eaten. Id. Plaintiff stated that he therefore could not comply with her request but that he might be able to bring in just the can. Id. Ms. Jacobson admonished Plaintiff for not giving the can of icing to Ms. Beyer the previous day and stated that "she would contact Kelly Services and report Plaintiff's failure to return the icing." Id. Then, Ms. Jacobson and Mr. Goedjen contacted Kelly and "said 'they' were mad that the icing was not returned" and "demand[ed] action against Plaintiff." Id. ¶ 79. Plaintiff maintains that he did not have to return the can of icing because, at the particular time, Mr. Goedjen and Ms. Jacobson worked for a different employer and the icing was a gift. Id. ¶ 78-79.

 Plaintiff then alleges that Kelly terminated him on December 26, 2001 and cited the icing incident as part of its reason for termination.

Id. at 8-9 (citations omitted). Plaintiff stated in his complaint: "[t]o the injuries already set out here, Plaintiff adds defamation, slander and libel on the part of Goedjen, Jacobson and IMF." This Court determined:

Any defamation claim is futile. "Defamation, which is another name for libel and slander, is an intricate tort with its own set of special rules." Bauer v. State, 511 N.W.2d 447, 449 (Minn. 1994). A plaintiff alleging defamation must plead and prove that the defendant "(1) published a statement of fact; (2) of and concerning him; (3) which was false; and (4) damaged his reputation and lowered his estimation in community." Glenn v. Daddy Rocks, Inc., 171 F. Supp. 2d 943, 947 (D. Minn. 2001); accord Bebo v. Delander, 632 N.W.2d 732, 739 (Minn. App. 2001). Further, "[f]ederal courts favor specific pleading of defamation claims because 'knowledge of the exact language used is necessary to form responsive pleadings.'" Daddy Rocks, 171 F. Supp. 2d at 947 (quoting Asay v. Hallmark Cards, Inc., 594 F.2d 692, 699 (8th Cir. 1979)); accord Bebo, 632 N.W.2d at 739. Of course, "[t]ruth is a complete defense, and true statements, however disparaging, are not actionable." Foley v. WCCO Television, Inc., 449 N.W.2d 497, 500 (Minn. App. 1989); accord Stuempges v. Park, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980); Jadwin v. Minneapolis Star and Tribune Co., 390 N.W.2d 437, 441 (Minn. App. 1986) ("If the statement is true in substance, inaccuracies of

expression or detail are immaterial.").

Here, even getting past the fact that Plaintiff has not clearly identified the allegedly defamatory statements, the only possible statement vaguely described in the complaint is that Ms. Jacobson apparently "report[ed] Plaintiff's failure to return the icing" to Kelly.  (March 14 Compl. ¶ 78).  As is admitted in the March 14, 2003 complaint, however, this statement is true.  Plaintiff did not return the icing because he thought he had no duty to do so and because it was being eaten at home.  (Compl. ¶ 78).  To the extent Plaintiff claims Mr. Goedjen or Ms. Jacobson told Kelly that they were Plaintiff's supervisors (and assuming such a fact was untrue), that statement does not, as a matter of law, damage Plaintiff's reputation or lower Plaintiff's estimation in the community.  Thus, accepting the truth of Plaintiff's allegations, Plaintiff fails, as a matter of law, to state a claim for defamation.

Id. at 9-10.  The Court further held that "[t]o the extent Plaintiff is alleging a claim for tortious interference with a contract against IMF (Mr. Goedjen and Ms. Jacobson) (Compl. ¶ 82-83), such a claim will not be permitted as part of this litigation."  Id. at 11.

The Court denied leave to add a claim for tortious interference because, "[d]elay, undue prejudice, addition of factually distinct claims, addition of new parties, and disruption of the Court's docket are all present in this case and establish that justice does not require the addition of a potential tortious interference with a contract claim against a new party."  Id.  Specifically, this Court found that:

a possible tortious interference claim against IMF is completely factually distinct from the existing statutory discrimination and wage claims against American Express and Kelly.  See Kinkead, 49 F.3d at 457 ("[Plaintiff], moreover, sought not to modify her § 510 ERISA claim, but rather to add new claims and an additional party.  Rather than allowing [Plaintiff] to restructure her case, the district court properly denied leave to amend and acted upon [Defendant's] pendent motion for summary judgment.").  Indeed, there is no connection between Plaintiff's claims against American Express and the proposed claims against IMF.  The discrimination and wage claims against Kelly (to the extent Plaintiff is even asserting such claims against Kelly) are unrelated to a tortious interference claim against IMF.

The prejudice to Defendants "must be balanced against the hardship to the moving party if [the motion to amend] is denied."  Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981).

Here, Plaintiff will suffer no prejudice because he is free to assert a properly supported claim for tortious interference with a contract against IMF in a separate action. "Although wrongful interference with a business relationship through defamation . . . [is] included under the two-year statute of limitations for intentional torts," <u>Wallin v. Minnesota Dept. of Corrections</u>, 598 N.W.2d 393, 401 (Minn. App. 1999), Plaintiff has failed to state a claim for defamation, and, therefore, cannot base his tortious interference claim on defamation. Thus, "under <u>Wild</u>, [tortious interference with a contract] claims are governed by the six-year statute of limitations for contract claims." <u>Id.</u> (citing <u>Wild v. Rarig</u>, 234 N.W.2d 775, 793 (Minn. 1975)); <u>accord</u> <u>Webb v. Savik</u>, No. 00-391, 2000 WL 1182802, at *2 (Minn. App. Aug. 22, 2000). With the six year limitations period, Plaintiff will be able to present such claim in a separate proceeding. <u>See</u> <u>Buder</u>, 644 F.2d at 694-95 n.5 (explaining that the plaintiff would experience significant hardship because denial of leave to amend would foreclose assertion of the proposed claim under the statute of limitations).

> [2] The other proposed claims against American Express and Kelly and against the State of Minnesota are also factually distinct from the existing claims, but the Court has already determined that those claims are plainly futile. The Court does not pass upon the futility of a potential tortious interference claim against IMF because it is not clear whether such a claim is even being asserted.

<u>Id.</u> at 14-15. Consequently, the Court denied Plaintiff leave to amend his complaint.

Subsequently, after briefing and oral argument, the Court took under advisement several motions: American Express' Motion for Summary Judgment , Kelly Services' Motion for Summary Judgment, and Plaintiff's Motions for Summary Judgment , Default Judgment, and Class Certification. <u>See</u> Doc. No. 242 at 13 in Civ. No. 02-4084. On March 29, 2005, this Court recommended to Judge Frank that the Court grant American Express' and Kelly Services' motions, deny Plaintiff's motions, and dismiss all of Plaintiff's claims with prejudice. <u>Id.</u> Judge Frank adopted the Report and Recommendation and dismissed all of Plaintiff's claims with prejudice. Doc. No. 254 at 2 in Civ. No. 02-4084.

**C.**   **Current Litigation**

In July 2005, Plaintiff commenced this suit in Minnesota state court against

Defendant General Mills.  (Doc. No. 1.)  The suit also named Kelly Services, Inc.,

American Express Financial Corp., American Express, and International Multifoods

Corp.  (Id.)  On August 17, 2005, Defendant General Mills removed the case to this

Court.  (Id.)  The other defendants consent to this removal.  (Id. ¶ 9.)  In his Complaint,

Plaintiff states:

> That on October 15, 2002, in the United States District Court, District of
> Minnesota, he timely filed claims against Kelly Services ("Kelly"), and its
> principal, American Express and its subsidiary company American Express
> Financial Advisors (together "AEFA") under the Minnesota Human Rights Act
> ("MHRA") and Title VII of the Civil Rights Act of 1964 as Amended ("Title VII")
> and the Age Discrimination in Employment Act ("ADEA") and the Fair Labor
> Standards Act of 1938 as Amended ("FLSA"), alleging violations of these
> employment statutes.  The claims also included state tort and contract claims
> of wrongful, malicious, wanton and willful interference with Plaintiff's contract
> of employment and business relationship against Kelly Services and AEFA.
> "All claims" were dismissed by the United States District Court May 26, 2005,
> and Plaintiff will appeal that dismissal of all these claims. . . . The federal
> court also denied a motion to amend the federal complaint to add
> International Multifoods ("IMC") and General Mills ("GM") as defendants to
> the discrimination claims for the discrimination conduct of their agent, Kelly,
> and this will be appealed.  In dismissing the claims, however, the United
> States District Court (Honorable Donovan W. Frank and his magistrate,
> Susan [Richard] Nelson), found that Plaintiff timely filed a lawsuit within the
> one-year time period provided by the MHRA.  Further, the federal court found
> that claims of tortious interference with a contract, were governed by a six-
> year statute of limitations, and that these claims would not be prejudiced by
> the federal court.

(Compl. ¶ 1.)  Plaintiff's Complaint continues:

> [The state court] has parallel and supplemental jurisdiction over this action
> pursuant to state and local statutes (including 28 U.S.C. § 1367).  Plaintiff
> files these claims brought in federal court pursuant to 28 U.S.C. § 1367(a) 30
> days after their dismissal by the federal court.  All the allegations in this
> Complaint arise from the same case and controversy as the action filed
> October 15, 2002, or alternatively involve the same nucleus of operative facts

in the same case or controversy.

(Compl. ¶ 14.)  Plaintiff does not expressly identify separate counts against Defendants in

his Complaint but alleges in one of the Complaint's seventy-eight paragraphs that:

> the above-named Defendants have discriminated against him in the area of
> employment on the basis of sex, age and marital status in violation of Title
> VII and the MHRA and the ADEA and the FLSA.  In addition, the employer
> acted without cause, maliciously, fraudulently and in bad faith, recklessly and
> negligently, and [in] violation of its employment contract with him, and to
> interfere with his employment and business relationship with Kelly and all its
> clients, including American Express and to fraudulently deprive him of
> remedial unemployment benefits.

(Compl. ¶ 77.)  Defendants now move to dismiss Plaintiff's action because they argue

the doctrine of res judicata and other matters of law bar his claims.  (Doc. Nos. 3, 9, 15,

21.)

## II.    DISCUSSION

### A.    <u>Removal of Plaintiff's State Court Action</u>

Here, Defendants contend that removal of Plaintiff's action is based upon federal

question jurisdiction, codified at 28 U.S.C. § 1331, because Plaintiff alleges federal

claims.  (Doc. No. 1 ¶¶ 2-6.)  Plaintiff argues that General Mills may only remove this

case to federal court if it "has some federal question in the state action which GM claims

gives them the right under [the] federal removal statute to remove this whole matter

back to this Court."  (Doc. No. 41 at 1.)  Plaintiff apparently thinks General Mills must

assert a "defense" that "invoke[s]" a "federal question."  (<u>Id.</u>)  Plaintiff's claims are

incorrect.  Federal law provides that "any civil action brought in a State court of which

the district courts of the United States have original jurisdiction, may be removed by the

defendant or the defendants, to the district court of the United States for the district and

division embracing the place where such action is pending."  28 U.S.C. § 1441(a)

(2000).  Further, "[a]ny civil action of which the district courts have original jurisdiction

founded on a claim or right arising under the Constitution, treaties or laws of the United

States shall be removable without regard to the citizenship or residence of the parties."

§ 1441(b).  Finally, "[w]henever a separate and independent claim or cause of action

within the jurisdiction conferred by section 1331 of this title is joined with one or more

otherwise non-removable claims or causes of action, the entire case may be removed

and the district court may determine all issues therein, or, in its discretion, may remand

all matters in which State law predominates." § 1441(c).  Plaintiff alleges claims based

upon federal statutes.  (Compl. § 77.)  That brings his state action within the ambit of

this Court's original jurisdiction, making removal to this court proper regardless of the

citizenship of the parties.  His state law claims are pendent and this Court may rule on

them.  § 1441(b).

### B.  Preclusive Effect of Prior Federal Litigation

Defendants argue that Plaintiff's current Complaint is an effort to relitigate claims

and issues raised in his prior federal court action.  Therefore, they argue that the

application of the doctrine of res judicata bars his claims.  While Plaintiff argues that his

"point in [his] response is not to reargue or re-litigate the prior case" (Doc. No. 41 at 12),

he also states, "[w]e all agree that res judicata applies to this case" (Id. at 14).  Plaintiff

argues that the doctrine of res judicata "operate[s] here to prevent any of the defendants

from bringing any more claims to this Court, or any court." (Id.)  By asserting the

doctrine of res judicata, however, each defendant here sets forth a legal defense, not a

claim.  It is Plaintiff who has put claims before the Court by asserting them in a

complaint in a removable action.

"Any court, state or federal, must ascribe to the judgment of any other state or federal court the res judicata effects that would be recognized by the court that rendered the judgment."  18B Charles Alan Wright et al., Federal Practice and Procedure § 4466, at 4 (2d 2002).  Where the first judgment is determined by a federal court imbued with federal question jurisdiction, the reviewing court applies federal common law to determine the preclusive effect of that judgment.  Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982) ("Federal law governs the . . . res judicata. . . . effect of the judgment rendered . . . by a federal court on a claim arising under federal law . . . .").  When the first judgment is determined by a federal court sitting in diversity, the federal rule of decision adopted is the state preclusion law that would have been used under similar circumstances had the action been a state judgment.  See Semtek Int'l, Inc., v. Lockheed Martin Corp., 531 U.S. 497, 508-09 (2001).  Because the Court finds that this case is properly before the Court pursuant to the federal removal statute and federal question jurisdiction, the Court applies federal common law in determining the preclusive effect of this Court's prior judgment.  Moreover, "it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum."  Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir.1997) (citation omitted), cert. denied, 522 U.S. 1090 (1998).  Here, Defendants invoke the res judicata effect of this Court's prior ruling which rested on federal question jurisdiction.

"The doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours.  It is a rule of fundamental and

12

substantial justice, 'of public policy and of private peace' which should be cordially

regarded and enforced by the courts . . . ." Federated Dep't Stores, Inc. v. Moitie, 452

U.S. 394, 401 (1981) (quoting Hart Steel Co. v. R.R. Supply Co., 244 U.S. 294, 299

(1917)).  The "mischief which would follow the establishment of precedent . . .

disregarding this salutary doctrine against prolonging strife would be greater than the

benefit which would result from relieving some case of individual hardship."  Id. at 401-

402 (quoting Reed v. Allen, 286 U.S. 191, 198-99 (1932)).  This doctrine is not "altered

by the fact that the judgment on the merits may have been wrong."  Id. at 398.

> [A]n "erroneous conclusion" reached by the court in the first suit does not
> deprive the defendants in the second action "of their right to rely upon the
> plea of res judicata. . . . A judgment merely voidable because based upon an
> erroneous view of the law is not open to collateral attack, but can be
> corrected only by a direct review and not by bringing another action upon the
> same cause [of action]."

Id. (quoting Reed, 286 U.S. at 201).

There are two forms of res judicata.  As the United States Court of Appeals for

the Eighth Circuit has succinctly noted:

> The binding effect of a former adjudication, often generically termed
> res judicata, can take one of two forms.  Claim preclusion (traditionally
> termed res judicata or "merger and bar") "'bars relitigation of the same claim
> between parties or their privies where a final judgment has been rendered
> upon the merits by a court of competent jurisdiction.'"  Plough v. W. Des
> Moines Cmty. Sch. Dist., 70 F.3d 512, 517 (8th Cir. 1995) (quoting Smith v.
> Updegraff, 744 F.2d 1354, 1362 (8th Cir. 1984)).  Issue preclusion (or
> "collateral estoppel") applies to legal or factual issues "actually and
> necessarily determined," with such a determination becoming "conclusive in
> subsequent suits based on a different cause of action involving a party to the
> prior litigation."  Montana v. United States, 440 U.S. 147, 15399 S. Ct. 970,
> 973, 59 L.Ed.2d 210 (1979).

W.A. Lang Co. v. Anderberg-Lund Printing Co. (In re Anderberg-Lund Printing Co.), 109

F.3d 1343, 1346 (8th Cir. 1997).

Claim preclusion "prevents 'the relitigation of a claim on grounds that were raised or could have been raised in the prior suit.'" Banks v. Int'l Union Elec., Elec., Tech., Salaried, and Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004) (quoting Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990), cert. denied, 498 U.S. 823 (1990)).  When evaluating whether claim preclusion applies under federal common law, courts analyze: "(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." Id.  "'A claim is barred . . . if it arises out of the same nucleus of operative facts as the prior claim.'" Id.  (quoting Lane, 899 F.2d at 742).  "[R]eliance . . . on different substantive law and new legal theories does not preclude the operation of res judicata" where the second claim "is based on the same nucleus of operative facts as the prior claim." Id. (quoting Lane, 899 F.2d at 744.)

Issue preclusion, on the other hand, "'bars the relitigation of factual or legal issues that were determined in a prior . . . court action, and applies to bar relitigation in federal courts of issues previously determined.'" Id. at 1054 (quoting In re Elisabeth Scarborough, 171 F.3d 638, 641 (8th Cir. 1999), cert denied, 528 U.S. 931 (1999)).  A defendant may rely on issue preclusion "'even though . . . not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action.'" Id. (quoting Lane, 899 F.2d at 741.)

In the instant action, Plaintiff's claims against Kelly and American Express are clearly barred by the doctrine of claim preclusion.  He sued the same parties in this Court previously.  The Court was a court of competent jurisdiction as it had original

14

jurisdiction over Plaintiff's claims.  Indeed, in the prior action, it was Plaintiff that brought his claims to this Court by filing his complaint in federal court.  <u>See</u> Doc. No. 1 in Civ. No. 02-4084.  The Court issued a final judgment on the merits of the claims Plaintiff raised in that prior action.  Judge Frank dismissed "all of Plaintiff's claims with prejudice."  Doc. No. 254 at 2 in Civ. No. 02-4084.  Finally, Plaintiff concedes the prior litigation involved the same cause of action he is now trying to litigate.  Plaintiff, in the Complaint now before the Court, states: "all the allegations in this Complaint arise from the same case and controversy as the action filed October 15, 2002, or alternatively involve the same nucleus of operative facts in the same case or controversy."  Thus, Plaintiff's claims against Kelly Services, Inc., American Express Financial Corp., and American Express are barred by the doctrine of claim preclusion because they either were already brought or should have been brought in the prior federal action.  <u>Banks</u>, 390 F.3d at 1052.

With the possible exception of Plaintiff's tortious interference with employment or business relationship claim, Plaintiff's claims against General Mills and IMF are also barred by the doctrine of claim preclusion.  In the prior federal litigation, the Court previously denied Plaintiff's motion for leave to amend the same claims against General Mills and IMF (then putative defendants) that he now seeks to bring against General Mills and IMF.  <u>See</u> Doc. No. 74 at 3-4, 8-11, 14-15 in Civ. No. 4084.

> The denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action.  "[D]enial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading."  This is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness.

Prof'l Mgmt. Assocs., Inc. v. KPMG LLP, 345 F.3d 1030, 1032 (8th Cir. 2003) (per curiam) (citations omitted).  Thus, Plaintiff's claims are barred because they are the same claims arising from the same cause of action against the same parties that have already been adjudicated.  Plaintiff cannot claim surprise or unfairness if these claims are now barred.  He had every incentive to litigate these claims against these same parties that were based upon, in Plaintiff's words, "the same nucleus of operative facts," or "the same case or controversy" as his present claims.  (Compl. ¶ 14.)  His bid for leave to add these claims failed, and he is now barred from bringing them again.

In his Complaint (addressed to the state court), Plaintiff alleges: "[The state court] has parallel and supplemental jurisdiction over this action pursuant to state and local statutes (including 28 U.S.C. § 1367).  Plaintiff files these claims brought in federal court pursuant to 28 U.S.C. § 1367(a) 30 days after their dismissal by the federal court." (Compl. ¶ 14.)  Plaintiff misunderstands the law.  It is true that Plaintiff could have originally filed his federal law claims in either state or federal court.  Plaintiff chose federal court.  Upon the filing of his prior lawsuit, which alleged violations of sections of the U.S. Code, this Court had supplemental jurisdiction over Plaintiff's state claims.  See 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  With the possible exception of a tortious interference claim against IMF, this court had no choice but to exercise supplemental jurisdiction over those state law claims presented by Plaintiff in the prior suit, either in his pleading or proposed as

16

amendments to his pleading, and, in fact, did exercise such jurisdiction, either by denying leave to amend to add those claims or by dismissing those claims along with his federal claims. Exercising supplemental jurisdiction was required because the state law claims presented did not fit into one of the four categories of state law claims over which this Court could have rejected jurisdiction.  See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1287 (8th Cir. 1998) (finding that § "1367 provides for the mandatory exercise of supplemental jurisdiction" and "plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described" in § 1367(c)).

The 30 day period for filing claims in state court to which Plaintiff refers is found in 28 U.S.C. § 1367(d).  That statute only applies where a federal court determines the federal claims to be without merit and dismisses the state law claims without prejudice. Here, however, the Court found that Plaintiff's state law claims relied on the same core facts as his federal claims and, thus, dismissal with prejudice was appropriate.  Ivy v. Kimbrough, 115 F.3d 550, 553 (8th Cir. 1997) (finding that where the plaintiff's "federal and state claims relied on the same core facts . . . . the district court properly concluded that there was no evidence to support either the § 1983 or the state law claims" and "there was no plain error, and no abuse of the court's discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367, in dismissing the pendent claims with prejudice").  Thus, had Defendants not removed Plaintiff's present action to this Court, the state court would have also been obligated to apply federal common law and conclude that Plaintiff's claims were barred by the doctrine of res judicata.

### C.   Plaintiff's Tortious Interference Claims

#### 1.   Effect of Issue Preclusion

As to Plaintiff's tortious interference claim with employment or business relations, Plaintiff asserts that General Mills and IMF interfered with his relationship with Kelly and Kelly's clients by making defamatory comments about him.  (Compl. ¶¶ 9-10, 17.) Plaintiff's Complaint states this Court "found that claims of tortious interference with a contract were governed by a six-year statute of limitations, and that these claims would not be prejudiced by the federal court."  (Id. ¶ 1.)  This Court found in the prior federal action that Plaintiff's defamation claim was futile so that he could not "base his tortious interference claim on defamation."  Doc. No. 74 at 15 in Civ. No. 02-4084.  The Court finds that the tortious interference claim Plaintiff now pleads rests on allegedly defamatory comments made by IMC or General Mills employees to Kelly or Kelly's clients.  (See Compl. ¶¶ 9-10.)  Plaintiff cannot now re-litigate the same claim where the same underlying facts and legal issues have already been determined against him. Banks, 390 F.3d at 1054.

#### 2.   Other Grounds for Dismissal of Plaintiff's Tortious Interference Claim

Moreover, to the extent his tortious interference claim is not barred by either claim or issue preclusion, Plaintiff's tortious interference claim should be dismissed for at least four other reasons.  First, as with Plaintiff's other claims, his tortious interference claims fail because his Complaint does not meet federal pleading requirements that he provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  While, pro se pleadings are more liberally construed than

those drafted by an attorney, <u>Smith v. St. Bernards Regional Medical Center.</u>, 19 F.3d

1254, 1255 (8th Cir. 1994), <u>pro se</u> litigants must "still . . . allege sufficient facts to

support the claims advanced." <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004).  The

Court "will not supply additional facts" or "construct a legal theory for plaintiff that

assumes facts that have not been pleaded." <u>Dunn v. White</u>, 880 F.2d 1188, 1197 (10th

Cir.1989), <u>cited in</u> <u>Stone</u>, 364, F.3d at 914.  Federal Rule of Civil Procedure 8(e)(1)

mandates that "[e]ach averment of a pleading shall be simple, concise, and direct."

Plaintiff's averments blur the distinction between defendants and do not clearly set forth

what claims are charged against which defendant.  For this reason alone, his tortious

interference claims (and any other state common law claims he may contend are found

within his Complaint) fail.  The Court's discussion of the statute of limitations for tortious

interference claims in the prior action does not change this outcome.  In fact, in his prior

federal action, the Court commented: "The Court does not pass upon the futility of a

potential tortious interference claim against IMF because it is not clear whether such a

claim is even being asserted."  Doc. No. 74 at 14 n.11 in Civ. No. 02-4084.

   Second, even if his claims had been properly pleaded, Plaintiff's claims are time

barred.  While most claims for tortious interference have a six-year statute of limitations

period, to the extent Plaintiff makes out such claims in his Complaint, they rest on

allegedly defamatory comments made by IMC or General Mills employees to Kelly or

Kelly's clients.  (<u>See</u> Compl. ¶¶ 9-10.)  "[A] claim of wrongful interference with a

business relationship by means of defamation is governed by the two-year statute of

limitations under Minn. Stat. § 541.07." <u>Webb v. Savik</u>, No. C0-00-391, 2000 WL

1182802, at *2 (Minn. Ct. App. Aug. 22, 2000); <u>see also</u>, <u>Wallin v. Minn. Dep't of Corr.</u>,

598 N.W.2d 393, 401 (Minn. Ct. App. 1999) ("[W]rongful interference with a business relationship through defamation, misrepresentation, or intentional infliction of emotional distress are included under the two-year statute of limitations for intentional torts.")  The cake icing incident and Kelly's termination of Plaintiff occurred late in December of 2001.  (Compl. ¶¶ 9-10.)  Plaintiff served his Complaint no earlier than July 12, 2005 (Doc. No. 1), well after the time for filing his tortious interference claims had expired. The Court cannot conceive of any possible tolling argument Plaintiff could offer that would make his claims timely.

Third, Plaintiff's tortious interference claims fail to state a claim upon which relief may be granted.  Plaintiff's claims must either be for tortious interference with contract or for tortious interference with prospective contractual or business relations.  There are five elements to a tortious interference with contract claim: (1) the existence of a contract; (2) respondents' knowledge of the contract; (3) respondents' intentional procurement of a breach of the contract; (4) absence of justification; and (5) damages caused by the breach.  Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994).  The Court finds that Plaintiff fails to set forth factual allegations that would support at least the first four of these five elements with regard to any defendant named in this litigation.  To prove tortious interference with prospective contractual or business relations, Plaintiff must prove: (1) that Defendants intentionally and improperly committed a wrongful act; (2) that act interfered with Plaintiff's prospective contractual relationship; and (3) that Plaintiff suffered pecuniary harm.  United Wild Rice, Inc. v.. Nelson, 313 N.W.2d 628, 632-33 (Minn.1982).  The Court finds that Plaintiff fails to set forth factual allegations that would support at least the first two of these three elements with regard to any

defendant named in this litigation.   Therefore, Plaintiff fails to set forth claims upon which relief may be granted.

Finally, even if not barred by res judicata, not time barred, properly pleaded, and based upon Rule 8 compliant averments, Plaintiff's tortious interference claims fail because any statements that he failed to provide the icing upon request are true. Plaintiff states in his responsive brief to the motions now before the Court that he "acted totally properly in not transferring the proprietary advertising material [i.e., the icing] to IMC for its competitive use against my own employer GM."  (Doc. No. 41 at 26.)  "An action for interference with contract does not lie where the alleged interference has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected and employs no improper means."  Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000).  "For purposes of this tort, improper means are those that are independently wrongful such as . . . defamation [or] misrepresentation of fact."  Id.  In the prior federal action, the Court already concluded that the averments Plaintiff makes here, which Plaintiff concedes are the same as those made in the prior litigation, were futile.  Doc. No. 74 at 15 in Civ. No. 02-4084.  Therefore, Defendants' statements were not improper, and Plaintiff concedes those statements were based upon the truth: Plaintiff did not return the icing when asked to do so.  Thus, Plaintiff's claims fail to state a claim upon which relief may be granted.

Based upon the above, the Court recommends that all of Plaintiff's claims and the entire Complaint be dismissed with prejudice.

**D.      Defendants' Request for Their Costs Incurred in Defending Against this Action**

Defendants General Mills, Kelly, and American Express request their costs, including attorneys' fees incurred in bringing this motion.  (Doc. No. 3 at 1; Doc. No. 11 at 7; Doc. No. 17 at 1.)  In light of Plaintiff's <u>pro se</u> status, the Court recommends denying these requests.  But Plaintiff's prolix pleadings, briefs, and arguments in this case and the prior federal action do concern the Court.  First, the Court has previously warned Plaintiff that he is responsible for complying with the local rules of this Court when submitting memoranda of law.  <u>See</u> Doc. No. 86 in Civ. No. 02-4084 ("The Court has liberally extended Plaintiff latitude by recommending the sanction requested by Kelly be denied, but Plaintiff should take heed. . . . Plaintiff has filed a lawsuit, and, therefore, he must follow the Federal Rules of Civil Procedure, this District's Local Rules, and the orders of this Court to avoid sanctions including dismissal of his complaint.  Further disobedience will not be treated leniently.")  Here, despite this Court's prior warning, Plaintiff again failed to comply with the local rules of this Court by filing a memorandum of law which uses a font size smaller than 13 and by not filing the certificate of compliance required under D. Minn. L.R. 7.1(c)).  Second, and of even greater concern, Plaintiff inserts unfounded accusations into the record.  For example, in his response brief to the motions addressed herein, Plaintiff states that defense counsel "have systematically violated and ignored the laws governing the rules of ethics, beginning in the prior action."  (Plaintiff's Response Mem. at 5 found at docket entry No. 41.)  Plaintiff also states in the same brief:

> To obtain the previous summary judgments and avert mine, Defendants have littered the record of the prior case with lies and perjury, deliberate

22

> misstatements and omissions of fact, and misstated law, failure to disclose law, and suppression of evidence.  Indeed the code of professional conduct for lawyers seems to have been perversely used by the employers as their playbook.  Nothing was too unethical, all the stops were pulled out to win one for the women.

(Id. at 8.)  For the record, there is no evidence in the record of any unethical conduct by Defendants or their counsel.  Thus, Plaintiff's claims are unwarranted and violate Federal Rule of Civil Procedure 11's requirement that his "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  Finally, Plaintiff concedes that his effort to end run the Court's prior determination of his claims was intentional: "I . . . am seeking to never allow this Court to hear or determine any part of this cause again."

"Defendants have a right to be free from harassing, abusive, and meritless litigation.  Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior."  In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988) (per curiam) (citations omitted).  The Court finds that Defendants are entitled to some relief from Plaintiff's vexatious pleadings and briefs.  In lieu of sanctions, however, the Court recommends that Plaintiff be forewarned that any future relitigation of this action will result in significant sanctions in addition to an award of Defendants' costs, including attorneys' fees, for those costs incurred in bringing the present motions to dismiss and any costs incurred in responding to such future relitigation efforts.  Therefore, the Court recommends an award of costs to Defendants be contingently deferred as set forth above.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1.     Defendant General Mills, Inc.'s Motion to Dismiss (Doc. No. 3) be

       **GRANTED**;

2.     Defendant Kelly Services, Inc.'s Motion to Dismiss (Doc. No. 9) be

       **GRANTED**;

3.     Defendants American Express Financial Advisors and American Express'

       Motion to Dismiss (Doc. No. 15) be **GRANTED**;

4.      Defendant International Multifoods' Motion to Dismiss or for Summary

       Judgment or for More Definite Statement (Doc. No. 21) be **GRANTED**;

5.     All of Plaintiff's claims be **DISMISSED WITH PREJUDICE**; and

6.     An award of costs to Defendants be contingently deferred as set forth

       herein.

Dated: January 9, 2006

                        s/ Susan Richard Nelson
                       SUSAN RICHARD NELSON
                       United States Magistrate Judge


Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 27, 2006 a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.